# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN P. CERRILLO,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br><br>Defendant. | Case No. 18-cv-03863-RS<br><br>**ORDER REMANDING FOR PAYMENT OF BENEFITS** |

## I. INTRODUCTION

Plaintiff John Cerrillo appeals the decision of the Commissioner of Social Security ("the Commissioner") denying him disability benefits under the Social Security Act ("SSA"). An Administrative Law Judge ("ALJ") reviewed Cerrillo's application and determined he was not disabled and thus not eligible for benefits. Upon consideration of the parties' cross-motions for summary judgment and for the reasons discussed below, the ALJ's decision is vacated and the matter is remanded for payment of benefits consistent with this opinion.

## II. BACKGROUND

Cerrillo is a fifty-one-year-old man with a history of physical and mental impairments. In May 2014, he filed applications for disability insurance benefits and Supplemental Security Income based on his alleged degenerative disc disease of the lumber and cervical spines, right ankle trauma, depressive disorder, post-traumatic stress disorder ("PTSD"), and stomach tumor. He has a high-school education and previously worked as a clerk and recreational facility manager. The alleged onset date of his disability was May 1, 2014. The Commissioner denied his

application initially and on reconsideration.

Cerrillo appeared in front of an ALJ in October 2016. At that hearing, Cerrillo testified about his own disabilities. The ALJ also considered a statement from Cerrillo's mother, as well as the opinions of several doctors—some of whom had treated or examined Cerrillo. Finally, a vocational expert ("VE") testified at the hearing and responded to several hypotheticals posed by the ALJ. In February 2017, the ALJ issued a decision finding Cerrillo not disabled. The Appeals Council declined to review the decision. This action followed.

## III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), a district court has jurisdiction to review the Commissioner's final decision denying benefits under the SSA. An ALJ's decision to that effect must be affirmed if it is supported by substantial evidence and is free of legal error. *Beltran v. Astrue*, 700 F.3d 386, 388 (9th Cir. 2012). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam). In determining whether a decision is supported by substantial evidence, the court must examine the administrative record as a whole, considering all of the facts. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If the evidence supports more than one rational interpretation, the court must defer to the ALJ's decision. *Id.* at 1258. "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (internal citation and quotation marks omitted).

## IV. DISCUSSION

### A. Standard for Evaluating Disability

A person is "disabled" for the purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner must follow a five-step sequential inquiry. 20 C.F.R. §§

404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden rests on the claimant to prove: (1) he is not working; (2) he has a severe medically determinable impairment that is expected to last more than twelve months; and either (3) that impairment is severe enough to meet or equal an impairment listed as a priori disabling without further vocational-medical evidence; or (4) the impairment causes such functional limitations that he cannot do his past relevant work. 20 C.F.R. § 404.1520(a)(4)(I)-(iv).

If the claimant successfully proves he cannot do his past work, then the burden shifts to the Commissioner to show at step five that the claimant can perform other work that exists in significant numbers in the economy; otherwise, the claimant will be found disabled. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). Moreover, if the claimant's impairment does not meet or equal a listed impairment under step three, the ALJ must determine the claimant's residual functional capacity ("RFC") and apply it during steps four and five to make a final disability determination. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4), which describes the five-step process). An individual's RFC is the most they can still do despite their limitations. *See* 20 C.F.R. § 416.945(a)(1).

### B. ALJ Application of Standard

Here, the ALJ followed this five-step inquiry. At step one, he found that Cerrillo had not engaged in substantial gainful activity since the alleged onset date of May 1, 2014. At step two, he found that Cerrillo had several severe impairments: depression, PTSD, right ankle trauma, opioid dependence, degenerative disc disease in the cervical and lumber spines, and a stomach tumor. The ALJ mentioned that all other conditions in the medical record would be considered non-severe "[d]ue to a lack of objective medical signs and laboratory findings of a longitudinal nature." Administrative Record ("AR") 31.[1] At step three, the ALJ found that Cerrillo's impairments did

---

[1] These "non-severe" conditions included: morbid obesity, gout, high triglycerides and blood pressure, hypertrophy of the prostate, calculus of the gallbladder, kidney cysts, Vitamin B-12 deficiency, cellulitis, esophageal disease, insomnia, hyperthyroidism, shortness of breath, chest pain, irritable bowel syndrome, durational colitis, and reflexive sympathetic dystrophy. The ALJ noted that Cerrillo's most recent medical provider had identified 32 "active problems." AR 36.

not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ then assessed Cerrillo's RFC. The ALJ accorded "no significant weight" or "some weight" to several assessments by doctors who had treated and examined Cerrillo, as their assessments were "not borne out in the record." AR 38–39. The ALJ also noted that Cerrillo's own statements were "not substantiated by objective medical evidence." AR 39. The ALJ concluded that Cerrillo possessed the RFC to perform light work, "except he should never climb ladders, ropes, or scaffolding, and only occasionally climb stairs or ramps, or balance, stoop, kneel, or crouch. In addition, [he] would be limited to simple repetitive tasks and interacting with the public and co-workers no more than occasionally." AR 38.

At step four, the ALJ found that Cerrillo was able to perform his past relevant work as a clerk. He nevertheless proceeded to step five, at which he concluded there are other jobs in significant numbers in the national economy accessible to Cerrillo, and thus that he is not disabled.

### C. Arguments on Appeal

Cerrillo contends on appeal that the ALJ's determination at steps four and five was not based in substantial evidence. He advances several lines of attack on the ALJ's opinion, arguing it improperly: (a) rejected the opinions of treating and examining doctors, (b) discounted the credibility of Cerrillo's own testimony, and (c) discounted the credibility of his mother's testimony.

#### *1. Medical Opinions*

Cerrillo contends the ALJ improperly rejected the opinions of (1) his treating mental health doctor, Dr. Vinh Thai; (2) his treating doctor, Dr. Danielle Nelson; and (3) his examining doctor, Dr. Paul Martin. To reject a treating or examining physician's opinion, an ALJ must provide "clear and convincing reasons" if the opinion is uncontroverted, or "specific and legitimate reasons that are supported by substantial evidence in the record" if that opinion is contradicted by another doctor. *Lester*, 81 F.3d at 830 (citation and internal quotation marks omitted). Even where contradictions exist, the ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*

*v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

In a February 2015 statement, Dr. Thai opined that Cerrillo would be markedly limited in his ability to, for example, understand, remember, and carry out detailed instructions; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; or accept instructions and respond appropriately to criticism from supervisors. The ALJ rejected the limitations Dr. Thai ascribed to Cerrillo purportedly because Dr. Thai used "forms consisting primarily of short, fill-in answers and check boxes" and failed to provide treatment notes, examinations, or laboratory findings supporting his assessment. AR 38. However, that rationale is blatantly contradicted by the hundreds of pages of medical records provided by the Milpitas Behavioral Health Center, where Dr. Thai treated Cerrillo. In particular, Dr. Thai recorded comprehensive narrative treatment notes at each of Cerrillo's visits documenting the observations backing his assessments. AR 769–71, 780–81, 797–98, 851–52, 867–68, 876–77, 906–07. Thus, the ALJ's rationale can in no way be considered a "detailed and thorough summary of the facts and conflicting clinical evidence." *Magallanes*, 881 F.2d at 751.

The ALJ also discounted Dr. Thai's opinion because Cerrillo had not been psychiatrically hospitalized or received mental health treatment "in quite a while." AR 39. It is "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Cerrillo in fact explained why he had not obtained all the mental health treatment recommended to him: he could not afford it. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds."). These then cannot be considered "clear and convincing" reasons to reject Dr. Thai's opinion.

The ALJ went on to reject Dr. Nelson's assessment because she had only treated Cerrillo for a "very short time" and endorsed a disability onset date prior to the date that she had begun treating him. This rationale does not point to any "conflicting clinical evidence," *Magallanes*, 881 F.2d at 751, nor is it "clear and convincing." The Milpitas Behavioral Health Center, where Dr. Nelson worked, treated Cerrillo for several years, and doctors frequently see patients *after* they

have developed an ailment—this is precisely why patients go to a doctor. The ALJ also asserted that Dr. Nelson's assessment contradicted itself in that it identified limitations on Cerrillo's functioning but noted his mood was "stable" when she met him. AR 39. As Cerrillo correctly points out, however, Dr. Nelson herself opined that the limitations on Cerrillo's functioning would produce "good days" and "bad days," AR 757—and therefore it is no contradiction to assert both that these limitations exist and that they were not manifesting on the particular day that Dr. Nelson saw Cerrillo. Finally, the ALJ rejected Dr. Martin's assessment that Cerrillo suffered from marked limitations in dealing with work stress and completing an eight-hour workday, because "[t]hese assessed marked limitations are not borne out in the record." AR 39. The ALJ stated that he had considered all available objective medical evidence in making this determination—but again failed to identify where in the record the contradiction to Dr. Martin's assessment lies. *Id.*

Thus, the ALJ rejected Dr. Thai, Dr. Nelson, and Dr. Martin's opinions purportedly because they were contradicted by the record, but failed to identify "specific and legitimate reasons." *Lester*, 81 F.3d at 830. He also failed to identify any clear and convincing reasons, independent of contradictions in the record, why their opinions should be rejected. The government's present motion attempts to identify evidence in the record that the government believes contradicts the doctors' opinions. However, at least regarding Cerrillo's mental health limitations, the government essentially provides evidence to bolster the ALJ's rationales that Cerrillo had some stable days and could perform basic household tasks, and thus he could not be suffering. As discussed above, those rationales are unconvincing. Thus, the ALJ improperly rejected Dr. Thai, Dr. Nelson, and Dr. Martin's assessments regarding Cerrillo's mental health.

### 2. *Claimant Testimony*

Cerrillo also contends that the ALJ improperly rejected his own testimony. To reject a claimant's testimony, there must be (1) "affirmative evidence showing that the claimant is malingering" or (2) "clear and convincing" reasons for doing so. *Lester*, 81 F.3d at 834. There is no evidence of malingering here. Regarding some of the physical limitations Cerrillo alleged, the ALJ did clearly "specify which testimony [he found] not credible, and then provide clear and

ORDER REMANDING
CASE NO. 18-cv-03863-RS
6

convincing reasons…to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). For example, the ALJ identified significant evidence in the record that contradicts Cerrillo's claims that he needed a cane for ambulation. AR 40. The ALJ also identified provisional diagnoses which various physicians had speculated about in the record, such as gout, but correctly pointed out that these diagnoses had never been confirmed or treated. *Id.*

However, regarding Cerrillo's mental health limitations, the ALJ was far less specific. He merely noted a few places in the record which identified Cerrillo's "normal" or "stable" mood and affect—but failed to grapple with the extensive evidence to the contrary. As discussed above, that Cerrillo appeared stable on any one day does not refute that his mental health challenges would, as he testified, produce good and bad days. Furthermore, the ALJ again noted Cerrillo's failure to seek treatment for his mental health—however, as discussed above, a failure to seek mental health treatment does not evince a lack of mental health challenges. While testimony contradicting "the medical record is a sufficient basis for rejecting the claimant's subjective testimony," *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008), when the medical record is properly construed to include Dr. Thai, Dr. Nelson, and Dr. Martin's assessments, as discussed above, it is less clear that Cerrillo's testimony actually contradicts the medical record. In fact, the ALJ himself acknowledged that Cerrillo's own statements were not "*entirely*" consistent with the medical evidence," AR 41 (emphasis added)—not that the statements were conjured from thin air. Thus, the ALJ improperly rejected Cerrillo's own testimony about his mental health, because he failed to identify "clear and convincing reasons" that testimony should not be believed.

### 3. *Lay Witness Testimony*

Cerrillo's final argument is that his mother's testimony was improperly discredited.[2] To reject a lay witness's testimony, the ALJ must provide reasons "germane" to the witness—for example that the testimony conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th

---

[2] The government's briefing misidentifies the lay witness who testified for Cerrillo: it was his mother, not his husband. The briefing also misgenders Cerrillo several times.

ORDER REMANDING
CASE NO. 18-cv-03863-RS

7

Cir. 2001). Here, the ALJ rejected Cerrillo's mother's testimony because it "mostly just repeat[ed] the claimant's own subjective complaints" and because she acknowledged that Cerrillo was able to do household tasks such as take care of a pet dog, do laundry, use a microwave, shop in stores, pay bills, watch TV, and attend church. AR 40.

To reject this testimony because Cerrillo's mother acknowledged that he can complete what are essentially basic household tasks is to fail to recognize the "critical differences between activities of daily living and activities in a full-time job." *Garrison*, 759 F.3d at 1016 ("The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (internal citation omitted)). That is, the rationale provided by the ALJ is not germane because it attempts to manufacture a contradiction—between what Cerrillo is claiming he cannot do, and what his mother says he can do—that does not exist. Cerrillo should not "be penalized for attempting to lead [a] normal [life] in the face of [his] limitations." *Id.* (internal citation omitted).

Thus, the ALJ improperly rejected Cerrillo's mother's testimony, as well as Cerrillo's own testimony and the assessments of his treating and examining physicians regarding his mental health. In doing so, the ALJ contrived an RFC determination which did not completely reflect what Cerrillo could do—and more importantly, what he could *not* do—and thus improperly posed to the VE hypotheticals that did not set out *all* of Cerrillo's limitations. *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). Thus, the steps four and five determinations were not supported by substantial evidence.

Having found that the ALJ improperly rejected evidence, the final issue is whether the case should be remanded for further proceedings, or simply for payment of benefits. Remand for payment of benefits is appropriate "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) (remanding for further proceedings "because the presentation of further evidence…may well prove enlightening" (internal quotations and citation omitted)). However, where an ALJ fails to provide adequate

reasons for rejecting the opinion of a treating or examining physician, that opinion is credited as a matter of law. *See Lester,* 81 F.3d at 834. Similarly, where an ALJ improperly rejects a claimant's testimony, and the claimant would be disabled if his testimony were credited, his testimony is credited as a matter of law. *Id.* Remand for payment of benefits is appropriate where "no purpose would be served" by further proceedings. *Id.*

Here, if the improperly rejected testimony were credited as a matter of law, Cerrillo would meet or equal Listing § 12.04, mandating a finding of disabled at step three. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.B.1 & 2. Dr. Thai stated that Cerrillo has marked restrictions in understanding, remembering, and applying information as well as interacting with others.[3] Cerrillo himself testified to marked limitations in his daily living activities. It is unclear what benefit further administrative proceedings would serve. Thus, remand for payment of benefits is appropriate. *See Lester,* 81 F.3d at 834 (remanding for payment of benefits where record established claimant met Listing § 12.04); *Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir. 1993) (same).

## V. CONCLUSION

For the reasons set forth above, the ALJ's decision is vacated, and the matter is remanded for payment of benefits.

**IT IS SO ORDERED**.

---

[3] The full list of marked limitations which Dr. Thai ascribed to Cerrillo include: remembering locations and work-like procedures; understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted by them; making simple work-related decisions; completing a normal work day or work week without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; maintaining social functioning generally; and maintaining concentration, persistence or pace. AR 737–38.

Dated: December 3, 2019

_____
RICHARD SEEBORG
United States District Judge